JOSEPH COLWELL, Assignee, etc., v. WILLIAM BLEAKLEY, Jr.,
Sheriff of Westchester county.

To make a judgment an estoppel to proving certain facts in a subsequent case,
it should be made to appear upon what grounds the prior verdict and judg-
ment proceeded.

HOGEBOOM, J.    The plaintiff is the assignee of Bunce,
Esler & Cobb, and brings this action against the sheriff of
Westchester to recover damages for a false return to an exe-
cution issued to him upon a judgment recovered by Bunce,
Esler & Cobb against the New York Steam Mill and Machine
Company.    This judgment was obtained on the 31st day of
March, 1860, for $2,513.58, and execution was issued thereon
on the same day, upon which, about the same time, the
sheriff levied on personal property of the value of several
thousand dollars, but subsequently returned the execution
unsatisfied.    The plaintiff gave *prima facie* evidence suf-
ficient to show that the New York Steam Mill and Machine
Company were in possession of the said property, and the
apparent owners thereof.

The defense set up in the answer of the defendant was in
substance that this action was defended by Alfred Booth;
that the property in question, prior to the incorporation of the
New York Steam Mill and Machine Company, belonged to
Montgomery & Lund, who organized the company in ques-
tion and transferred to it all their property for the purpose of
defrauding their creditors, but in reality for their own benefit.
That Booth, on the 17th day of December, 1859, recovered a
judgment against Montgomery and Garrabraat for $2,224.80
and issued an execution thereon on the 20th of the same
month to the sheriff of Westchester, under which the sheriff
sold to him all the property now in question and also a steam
engine, which engine Booth afterward took to New York;
and while there it was levied upon and sold under an execu-
tion in favor of Bunce, Esler & Cobb, and purchased by the
latter firm; that Booth thereupon commenced an action in
the Supreme Court against Bunce, Esler & Cobb and other

persons who indemnified them, to recover the value of said steam engine, and after a litigation obtained judgment therein in his favor. He therefore claims that the plaintiff, who succeeded to the rights of Bunce, Esler & Cobb, is estopped by the judgment in that action from recovering in this action against the defendant, who is represented here by Booth. But the defendant did not, on the trial of this action, prove all the foregoing facts.

The only material facts proved on the defense were, that Booth was the indemnitor of the sheriff; that the parties to the former suit *claimed* the steam engine in the modes hereinbefore stated, to wit: The plaintiff therein as the judgment creditor of Montgomery and Garrabraat, and as the purchaser of the property on execution issued on that judgment; the defendants therein as the judgment and execution creditors of the New York Steam Saw-Mill and Machine Company, under the judgment before mentioned; that the jury rendered a verdict for the plaintiff on which judgment was entered; from which judgment an appeal had been taken to the Court of Appeals. The judgment roll in that action was also introduced in evidence, having been filed in Orange county on the 25th of October, 1862.; but the contents of the judgment roll are not set forth in the case.

On this evidence the defendant claimed that the recovery of the latter judgment was a bar to this action, and on that ground moved to dismiss the complaint; which motion the court granted, and directed the jury to find a verdict for the defendant. The plaintiff's counsel excepted. An appeal is now taken to this court.

The point principally discussed here is, whether the appeal taken from the judgment in question deprives it of its force as an estoppel. But, independent of that question, I think the nonsuit was erroneously granted.

1. I think it does not sufficiently appear that the verdict of the jury was founded upon the fact that the organization of the Steam Saw-Mill and Machine Company was a fraudulent contrivance by Montgomery and Lund, for the purpose of defrauding their creditors, and, therefore, void as against

the plaintiff in that action. The proof is that such a claim was set up on the trial. It is not shown that there was evidence to support it; it is not shown (for the pleadings are not before us) on what ground the defendants in that action defended the same; nor on what ground the verdict of the jury proceeded. The effect of that judgment as an estoppel depended upon the proof of facts extrinsic to those which appeared in the judgment record, and they were not sufficiently established.

2. But a more decisive objection consists in the fact that, assuming the fraudulent purpose of Montgomery and Lund in organizing the Steam Saw-Mill and Machine Company, and, therefore, that it was ineffectual against their creditors; there was still an interest in the property, to wit: the interest of Lund, which was not reached by the execution of Booth, and which was reached by the execution of Bunce, Esler & Cobb. The defendants in Booth's execution were Montgomery and Garrabraat, and not Montgomery and Lund. Lund had transferred his interest in the property to the Steam Saw-Mill and Machine Company, against which the execution of Bunce, Esler & Cobb was issued; and there were no creditors of Lund to dispute the validity of such transfer. That interest being subject to levy and sale under that execution, the sheriff was bound to seize and sell it, and not return the execution unsatisfied.

If it be said the same fact must have appeared in the former suit and in such an event would have led to a diminution of the recovery, the answer is, we are not in possession of facts transpiring on that trial, to show that such was not the case. We do know from the proceedings which have come up to us on appeal in that case, that such deduction should have been made if it was not, and that probably an error was committed in that respect, on the trial of that cause. At all events it is quite apparent in this case that there was such an interest, which the execution in the Booth suit could not legally seize.

If these views are well founded, they must lead to the reversal of the judgment, independent of the question of the effect of the former judgment as an estoppel.

There will be no reason to regret such a result if it is now legally attainable, inasmuch as we have already decided to reverse the judgment in the action of Booth; and when judgment shall be perfected on the result of that appeal, it will necessarily deprive the judgment which has been pleaded as an estoppel, of the conclusive character attributed to it. This would probably lead to some application to the Supreme Court in this case, when it shall be recalled to that tribunal, to obtain in some proper way the benefit on this suit of the reversal of the judgment in that suit — a benefit to which the party would be equitably entitled.

I am for reversing the judgment of the Supreme Court, and ordering a new trial, with costs, to abide the event.