RICHARD ESTERBROOK, JR., AS ASSIGNEE, &C., RESPONDENT, *v.* JOSEPH W. SAVAGE, APPELLANT.

*Rights of one purchasing land after a judgment in partition, when the judgment is subsequently set aside—when the purchaser is entitled to a confirmatory deed from his vendor—when an infant is estopped by the recitals contained in a deed made by his special guardian.*

In 1834, one Francis Child died, leaving a will, by which he devised certain land to his widow for life, with remainders to his three daughters, Jane Reed, Caroline Savage, and Mary Parsons. In 1845, a decree was made in an action of partition brought by the widow, by which the lot, to recover which this action was brought, was set off in fee to Mrs. Parsons, who died in 1847, leaving an infant daughter, now Mrs. Allen, to whom the lot descended. Subsequently a bill of review was filed by Jane Reed, and a judgment procured setting aside the decree of partition, and all proceedings thereunder. While the bill of review was pending, and in pursuance of an order of the chancellor, made upon the application of the father of Mrs. Allen, then an infant, the lot in question was sold to the widow, who thereafter conveyed it, by a full warranty deed, to the defendant. Mrs. Allen alluded in her answer to the bill of review, to this application, praying that in case a new partition were ordered, the rights of the purchaser might not be disturbed, and that the lots originally set apart to her mother might, on a subsequent partition, be set apart to her.

In a second action for partition, to which Mrs. Allen and the defendant were parties, the former put in the usual answer of an infant, and the latter

suffered a judgment to be taken by default, in pursuance of the advice of his counsel. By the decree therein, the lot was again set off to Mrs. Allen.

In an action brought by Mrs. Allen to recover the lot so purchased by the defendant, the latter set up the foregoing facts, and prayed that she be compelled to execute a confirmatory deed of the lot to him.

*Held,* that neither the judgment on the bill of review, nor that in the second action for partition, estopped the plaintiff from setting up the equities existing in his favor, but that he might set them up in this action, and procure herein the affirmative relief to which he was entitled.

*Held,* further, that Mrs. Allen was estopped from claiming the land by the recitals contained in the deed of her special guardian, referring to the petition upon which the order for a sale was made, it being alleged therein that she was the owner in fee of the lot to be sold.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

This action was commenced in 1866, by one Josephine Allen, to recover the possession of certain land, in the city of New York, claimed to be wrongfully withheld from her by the defendant. The present plaintiff, who is the assignee in bankruptcy of the said Josephine Allen, was substituted in her place by an order made on the 30th day of April, 1878.

*W. Howard Wait,* for the appellant.

*William H. Arnoux,* for the respondent.

BARRETT, J. :

This is an action in ejectment, to recover possession of a lot of land in West Forty-seventh street, in this city. The plaintiff's assignor, Mrs. Josephine M. Allen, had a verdict at the circuit; and from the judgment entered thereon the defendant appeals.

The facts, essential to a proper appreciation of the important questions of law now presented, are these:

One Francis Child died in 1834, seized of certain premises, on the Bloomingdale road, of which the lot in controversy was part. He left a widow, Mary Child, and four children, Abraham Child, Jane Reed, Caroline Frances Savage, wife of the appellant, and Mary Parsons, the mother of Mrs. Allen. In the year 1844 Abra-

ham died intestate and without issue ; Francis Child left a will, the provisions of which need not be stated, further than that, thereunder, Mary Child took a life estate, and these three daughters remainders. Mary Child subsequently commenced an action in partition, and in October, 1845, a decree was made, fixing the rights of all the parties, and setting off the lot in question, with other property, to Mary Parsons in fee. In February, 1847, Mrs. Parsons died, and this lot descended to her infant daughter, the present Mrs. Allen, as her only heir at law. The partition seems to have been unsatisfactory to some of the parties, for we find that in the month following Mrs. Parsons' death, Jane Reed filed a bill of review, to which Mary Child, Mrs. Allen, and the present appellant were made parties defendants. This suit subsequently resulted in a judgment setting aside all the previous proceedings. While the bill of review was pending, Mrs. Allen (then Josephine M. Parsons), by her father, petitioned the chancellor that one of the lots, which by the partition had been set apart to her mother, and upon the latter's death had descended to her, might be sold. She alluded to this application in her answer to the bill of review, and prayed, that, in case such bill resulted in a new partition, the rights acquired by the purchaser should not be in any manner disturbed, and (evidently in aid of that purpose) that the same lots originally set apart to her mother, should in any such subsequent partition, be allotted to her. Mrs. Allen's petition was granted; and thereupon, pursuant to an order of the court, the lot in controversy was sold by the special guardian to Mrs. Mary Child, for what seemed to the chancellor, and undoubtedly was, a full and adequate consideration. Mrs. Child thereafter conveyed to the appellant, for the same consideration and by a full covenant warrantee deed. The legal title to this lot, thus acquired by the appellant, was subsequently swept away by the judgment on the bill of review. That left the entire estate in its original condition. The allotments fell with the rest of the proceedings, and the property was again held in common. While this condition of things divested purchasers (from the individual heirs) of their legal title to lots which had been set apart in severalty under the original partition, it certainly raised a strong equity in their favor. They

were clearly entitled either to a return of their purchase-money, or in case of another and valid partition, resulting in a fresh apportionment of the same lots to the same individuals, to confirmatory deeds. This was thoroughly understood by all parties, and shortly after the judgment on the bill of review was rendered, Mrs. Reed and her husband filed a petition under the Revised Statutes for a new partition, to which the appellant, and of course Mrs. Allen, were made parties. The latter put in the usual answer of an infant by her guardian; but the appellant suffered default, having been advised by his counsel that he could not, in that proceeding, set up the equities between himself and Mrs. Allen with respect to this lot. The result was that the property was again partitioned, and by an arrangement between the commissioners, the parties, and the respective counsel, made with a special view to confirmatory proceedings, the lot in question was set apart to Mrs. Allen. As though in explanation of this allotment, we find in the decree a recognition, in the form of a recital, of the previous conveyances from Mrs. Allen's special guardian to Mrs. Child, and from the latter to the appellant.

Upon this state of facts, it would seem as though a confirmatory deed were almost a matter of course. It is averred that such a deed was readily secured by another purchaser similarly situated, and that Mrs. Allen's father facilitated the proceedings looking to that end; but that, from motives which, if truthfully stated, were certainly unworthy, he refused to comply with the understanding as to the appellant's right, and treated his daughter's title as independent and paramount.

Proceeding to effectuate this injustice, Mrs. Allen commenced against the appellant an ejectment suit for the lot in question. Just here the appellant made what the courts have held to be a grave mistake of practice. Instead of setting up in his answer, as he now does, the special equities to which we have referred, he commenced a cross action in which these equities were set forth, and sought therein to enjoin the ejectment suit, and to obtain a decree for a confirmatory deed. The cross action was first tried, and the appellant prevailed upon the merits, the referee, Ex-Judge H. ULSHOEFFER, holding that Mrs. Allen was bound by the re-

citals in the special guardian's deed; that the appellant was not estopped by the second partition decree; and that there was ample equity to support the claim for a confirmatory deed. Upon appeal to the general term this judgment was reversed, *and the complaint absolutely dismissed,* not upon the merits, but upon the sole ground that the pending ejectment suit could not be thus enjoined; that the equity suit was unnecessary and improper, and that the facts stated in the bill should have been set up in the answer in ejectment. From this an appeal was taken which was heard and decided by the commission of appeals. (*Savage* v. *Allen,* 54 N. Y. 458.) The judgment of dismissal was there affirmed, and a motion for a re-argument, subsequently made, was denied. This presents the first question raised upon the present appeal. The doctrine of *res adjudicata* is invoked, and it is urged, that the appellant is concluded upon the merits by this judgment of the commission. We must inquire, therefore, what was actually decided by that court. This is a question of fact, upon which the opinions may be considered. The rule that an appellate court will not look *dehors* the record, for the grounds of a decision, was of course not applicable below, where the question of *res adjudicata* was directly involved. All that the record under consideration shows is, certain findings of fact upon the merits by the referee, a judgment thereon in favor of the plaintiff, an order of the general term reversing that judgment and dismissing the complaint, and a judgment of the commission of appeals affirming the order of the general term. What was determined by the referee is clear and well defined. Not so, however, as to the appellate judgments. So far as the record speaks, they may have proceeded either upon the question of practice, or upon the merits, or both. Under such circumstances it is well settled that extrinsic evidence is admissible to ascertain what was really decided. (*Angel* v. *Hollister,* 38 N. Y., 378; *Colwell* v. *Bleakley,* 1 Abb. Ct. App. Dec., 400; *Doty* v. *Brown,* 4 N. Y., 71; *Burwell* v. *Knight,* 51 Barb., 267.) As to the general term, the question is entirely free from doubt. From an examination of Mr. Justice Ingraham's opinion, it appears, as we have already seen, that the case was decided solely on the question of practice, and that the findings and judgment of the

referee upon the merits were not at all considered. The opinion of the commission of appeals was prepared by Mr. Commissioner REYNOLDS. That opinion commences by concurring with the general term on the question of practice. It does not, however, rest there, but proceeds to express the views of the court upon the merits, holding that by the judgment on the bill of review, and in the second partition suit, Mr. Savage was estopped from any claim of title to the premises in dispute. Upon the motion for a reargument, an explanatory opinion was filed by the same commissioner, the effect of which, as we understand it, was to place the judgment squarely upon the question of practice, and to leave Mr. Savage free to set up his special equities in the other action. The question of practice was referred to as controlling, while the remarks upon the merits were treated as a mere intimation of opinion for the guidance of the court below in the ejectment suit. A distinction was then drawn between an estoppel as to the legal title, and the right to claim a confirmatory deed because of special equities. "It is also urged," said the learned commissioner, "as a reason why he (Savage) did not set up any claim to it in the last partition, that he in fact had no title to the lot, but that he had an equity to compel the defendant to convey the lot to him, if it should in the last partition (as it was) be set off to her in severalty. It seems sufficient to say that, if he had no title to the lot, no amount of alleged estoppel by judgment could do him any harm, and I think we had the impression that the supposed estoppel prevailed only as to the legal title. It may, indeed, be that any equities he is supposed to have, which could arise against the defendant only after the final decree in partition had been pronounced would not be concluded by the record of that judgment, and if it now be assumed that such is the exact condition of the plaintiff's right, it makes it only the more certain that he should have interposed, as he might, that affirmative defense in the action of ejectment brought against him and demanded the relief to which he supposed himself entitled; and it furnishes a more satisfactory reason why our judgment previously rendered should not be disturbed." We think it is quite plain, after a careful review of these opinions, that *the judgment* of the court proceeded upon the question

of practice, supplemented by its views on the doctrine of estoppel as to the legal title. We are fully persuaded, however, that the court did not adjudicate against the special equities of the bill, nor against Mr. Savage's right thereunder to a confirmatory deed.

This brings us to the merits. Having thus failed in his cross action, Mr. Savage, as he should have done originally, set up his equities in the present ejectment suit, and the main question is at length fairly and regularly up. Is he then estopped from setting up these equities by the judgments on the bill of review or in the second partition action? We really cannot perceive what the bill of review has to do with the question. Of course, by the judgment then rendered, Mr. Savage's legal title was wiped out. Such was its effect, whether he were made a party to the proceedings or not. There were no equities to set up. They did not then exist, for he had the legal title until divested by the decree.

The real question is whether he should have set up these equities in the second partition suit. He was made a party to that suit, but none of the questions between himself and Mrs. Allen were raised by any averments of the bill or of her answer. It will also be observed that Mr. Savage's interest was not that of a joint tenant nor of a tenant in common. His legal title was gone, and his equity depended upon a fresh allotment to Mrs. Allen of the premises in question. He could not properly have set up the facts, and prayed for such an allotment with decree over against Mrs. Allen for a confirmatory deed. That would have been entirely anomalous and without precedent in such a proceeding. Although a party in fact he was in law a stranger to the partition. The general rule is that partition deals only with joint or common interests. The lands must be in the possession of joint owners. All questions respecting the legal title of adverse claimants must be settled in an appropriate action. (*Van Schuyver* v. *Mulford*, 59 N. Y. 426; *Florence* v. *Hopkins*, 46 N. Y., 182; *Jackson* v. *Myers*, 14 Johns., 354; *Therasson* v. *White*, 52 How. Pr., 62, and cases there cited.) One joint owner cannot, as against the others, lawfully convey a specific portion of the land. (*Broughton* v. *Howe*, 6 Verm., 266; *Varnum* v. *Abbot*, 12 Mass., 476.) Nor can one who has accepted

a contract for the sale of such specific portion, successfully invoke the court in which the partition proceedings are pending, to make such an allotment as will enable him to enforce his contract. ( *Wright* v. *Vernan*, 1 Drew. & Sm., 331.) Even as to a tenant in possession, it has been held that *his equitable claims* are not affected by the judgment in partition, *although he appeared and pleaded.* (*Baylies* v. *Bussey*, 5 Greenl., 153 ; and see *Peck* v. *Chambers*, 7 B. Mon., 565 ; *Tilton* v. *Palmer*, 31 Maine, 486 ; and *Coates* v. *Street*, 2 Ashm., 12.) These rules are not changed by the statute. (2 R. S., 316–332.) Section 15 undoubtedly refers to undivided interests in the premises. This is evident when it is read in connection with the other provisions, as to the pleadings, proceedings and judgment. (See §§ 16, 18, 29, 30, 31.) If the legislature had designed to abrogate the well settled and wholesome rules to which we have referred, and to substitute a system so inconvenient and incongruous as that contended for, not only would specific language have been used, but in addition provisions would undoubtedly have been made regulating the novel procedure and rendering it less embarrassing to the main purposes of the action. We are, therefore, of opinion that Mr. Savage was well advised not to set up his equity in the second partition action, and that, so far from being estopped by the judgment therein, his equity became thereby complete.

Had then Mrs. Allen the right, upon the confirmation of the fresh allotment to her of the premises in question, to ignore the understanding and to maintain ejectment against the appellant ? To this we think there can be but one answer. Such a position was a fraud upon the appellant. What was the original intention of the parties ? Not to quit-claim or release a doubtful " right, title and interest " of the infant, but clearly to vest in Mary Child the entire fee of the premises. For that she paid not only a full and adequate consideration, but actually more than the lot was valued at in the petition. All parties relied upon the partition decree of the Court of Chancery and upon the subsequent proceedings for the sale of this lot. It would be monstrous to permit a vendor thus to take advantage of an informality or irregularity in the partition proceedings resulting in the destruction of title in severalty and the remitting of parties to their original joint interests. Equity and good

conscience demanded that upon the proceedings being begun *de novo*, every proper effort should be made to secure the same allotments, with a view to reinstating the appellant in his just rights. As we have seen, this honest spirit was impressed upon the legal proceedings by the prayer of Mrs. Allen's answer to the bill of review, and by the recitals in the second partition decree. It was further signified by the parol understanding, which was offered in evidence, and erroneously rejected. These facts constituted a full and sufficient equity, and entitled the appellant to affirmative relief. (See *Kellogg* v. *Wood*, 4 Paige, 615, and *Edwards* v. *Varick*, 5 Denio, 694.)

But we are also of opinion that Mrs. Allen was estopped by the recitals in her special guardian's deed to Mary Child. The petition, the proceedings thereon, and the order of the court, are there recited. The facts stated in the petition are thus engrafted upon the deed, and the recital is equivalent to a reassertion in that connection of the ownership in fee. . (*Jackson* v. *Waldron*, 13 Wend., 209.) "By referring to the will," said Mr. Senator Tracy, in that case, "*and thus making the will a part of the recital, it effectually recites that the devise was of a fee.*" (And see *Edwards* v. *Varick*, 5 Denio, at p. 680.) There are not many branches of the law more overladen with refinements than this as to estoppels. (See Senator Tracy's opinion, in *Jackson* v. *Waldron*, *ubi supra*, from p. 205 to p. 208.) There are certain rules, however, which appear to be reasonably well settled. A good deal depends upon the intention of the parties with respect to the quality of the estate, as expressed upon the face of the instrument. (*Van Rensselaer* v. *Kearney*, 11 How. S. C., 323.) As in the case of quit-claims or releases, where it is evident from the form of the deed that a conveyance of something less than a fee was designed. Where, however, the grantor conveys without title, but with covenant of war-ranty, he will be estopped, *and an after-acquired title will pass to the grantee.* (*Sparrow* v. *Kingman*, 1 N. Y., 246.) This rests upon the doctrine of avoiding circuity of action. If the conveyance be without covenant of warranty, but distinctly recites ownership in the fee, he is also estopped. (*Same case.*) This proceeds upon a different principle, namely, that of having thus affirmed

title in fee, and such affirmation being an inducement to contract, it would be fraudulent in the grantor to gainsay or deny it. (*Same case*, and *Pelletreau* v. *Jackson*, 11 Wend., 117 ; *Jackson* v. *Waldron, ubi sup.*, 206.) That is this case.

A suggestion was made in the reply as to the trust relation of Mary Child and the appellant to Mrs. Allen's mother. No evidence was offered in support of this ; but as Mrs. Parsons was deceased, the trust relation had terminated, and there was no legal objection to the contract with her daughter. Further, the transaction was open and above-board ; was known to the infant's father, and was reported to the chancellor, and approved by him.

In the view which we have taken of the case it will not be necessary to give any critical or extended examination to the rulings on the subject of damages. Suffice it to say, that we think the questions addressed to the defendant and the witness Hardman should not have been excluded, and, as it is not improbable that the damages were considerably enhanced in consequence, we think a new trial must necessarily have resulted from that error alone.

Upon the main branch of the case which has been discussed, we do not feel justified in granting, *on this appeal, the affirmative relief* to which we think the defendant was entitled below.

We will, therefore, confine ourselves to a reversal of the judgment and the award of a new trial with costs to abide the event.

BRADY, J., concurred.

Present—BRADY and BARRETT, JJ.

Judgment reversed, new trial ordered costs, to abide event.